# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

QUINTON L. STUMON,  )
  )
      Plaintiff,  )
  )
v.  ) No. 4:14-cv-00306-NKL
  )
CAROLYN W. COLVIN,  )
Acting Commissioner of Social  )
Security,  )
  )
      Defendant.  )

## ORDER

Plaintiff Quinton L. Stumon appeals the Commissioner of Social Security's final decision denying his applications for disability and disability insurance benefits under 42 U.S.C. §§ 216(ii) and 223(d); disabled widower's benefits under 42 U.S.C. §§ 202(f) and 223(d); and supplemental security income 42 U.S.C. § 1614(a)(3)(A). The Commissioner's decision is affirmed.

### I. Background

Stumon was born in 1961 and was 49 years old on the alleged disability onset date of February 15, 2011. He claimed disability based on ulcers, drug addiction, depression, anxiety, sleep problems, an eating disorder, and problems with attention, concentration, and memory. His present appeal focuses on issues relating to his mental limitations and past employment activity.

Stumon has a ninth grade education, and claims he was in special education

classes from sixth through ninth grade.  He began using alcohol at 14 and crack cocaine at 26.  He claimed drug addiction prevented him from working, but that he stopped using alcohol and drugs in July 2011.  He has been incarcerated three times, the last time in 2007, and has been in and out of county jails most of his life.  He had been married for almost 20 years when his wife passed away in 2011.

Stumon has reported earnings and work activity over more than 30 years, including after the alleged disability onset date.  His jobs included production assembler in 2005, 2006, and 2007, where he was paid $9 per hour, and worked up to 40 hours a week on and off.  He has obtained work through a temporary employment agency.  Most recently, in 2012, he worked as a cook's helper at a bar, and did lawn care work at homes near his own.

Stumon lives alone and does all his own cooking, cleaning, laundry, and yard work.  He does not need any special reminders to take care of his personal needs, take medicine, or attend doctor appointments.  He rides the bus almost every day.  His hobbies are playing pool, swimming, playing basketball and watching television. He takes care of his ailing mother on a daily basis, cleans, does her laundry, and picks up her prescriptions.  Stumon testified that he struggles with mathematics, reading and writing.  He can read, though with difficulty, and relied on friends and family to help him understand written communication.  The ALJ observed that Stumon did not have any difficulty concentrating or paying attention during the hearing, appeared to process the questions without difficulty, and responded to the questions appropriately and without delay.

On October 27, 2011, John Keough, M.A., performed a consultative psychological examination at the request of the state agency. Mr. Keough opined that Stumon appeared to be functioning in the borderline range of intellectual functioning. Stumon's memory function appeared to be adequate. His ability to understand and remember instructions, on a sustained basis and as necessary to make routine work-related decisions without supervision, was somewhere between the simple to moderate level of complexity, as long as he was not using alcohol or other street drugs. His ability to sustain concentration, be persistent in tasks and maintain an adequate pace in productive activity, necessary to be gainfully employed working 40 hours a week, in a mainstream work -related environment, for a duration of at least 12 months, would be adequate in a low stress and low-demand work setting. His ability to adapt to the work environment, respond appropriately to supervision in a work setting, adjust to changes in routine, and interact socially in an appropriate manner, appeared to be moderately impaired by a mood disorder, anxiety, impulse-control issues, personality deficits, and a long history of substance abuse and dependence. Mr. Keough assessed a global assessment of functioning (GAF) score of 55 to 70, indicating mild to moderate symptoms or difficulty functioning. The ALJ gave the consultative examiner's opinion significant weight.

On November 8, 2011, Phillip Rosenshield, Ph.D., a non-examining consultant, completed a Mental Residual Function Capacity Assessment. Dr. Rosenshield opined that in the absence of drugs and alcohol, Stumon is capable of concentrating sufficiently well to perform simple, repetitive work tasks in a timely manner without

special supervision, and to adapt to changes in the work setting. He is capable of engaging in superficially appropriate interactions with coworkers, supervisors and the general public, although he would perform most effectively in work situations that only require limited social contact. Dr. Rosenshield did not find that Stumon met any of the requirements of Listing 12.05, mental retardation, one of the categories covered by the Mental Residual Function Capacity Assessment form. [Tr. 366]. The ALJ gave the consultant's opinion significant weight.

The ALJ found Stumon had severe impairments that included cervical degenerative disc disease; right shoulder paresthesia; mood disorder not otherwise specified; anxiety disorder not otherwise specified; impulse control disorder not otherwise specified; alcohol dependence; polysubstance abuse dependence; personality disorder not otherwise specified with emphasis on cluster B traits; and borderline intellectual functioning. The ALJ found Stumon did not have any impairment or combination of impairments listed in or medically equal to a listing in 20 C.F.R. part 404, subpart P, appendix 1. To give Stumon "the benefit of every doubt," the ALJ included limitations in the RFC involving written communications and mathematics. [Tr. 22].

The ALJ determined that Stumon retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[1] and Social Security Ruling 83-10;

---

[1] As defined by the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these

4

he could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for up to six hours during an eight-hour workday. Stumon could not perform overhead reaching with the right upper extremity; was limited to frequent fingering and handling with the right upper extremity; was limited to work that did not require written communication or more than simple math; and was limited to simple, routine, and repetitive tasks. He was to avoid interaction with the public, and could tolerate only occasional supervision. Finally, he could work around co-workers throughout the day, but must have only occasional interaction with co-workers.

The vocational expert classified Stumon's past work as a production assembler as light, unskilled work with a specific vocational preparation (SVP) of 2 as generally performed pursuant to the Dictionary of Occupational Titles (DOT)[2] and as actually performed by Stumon.

The ALJ concluded Stumon was not disabled, on two bases. The ALJ found that, based on the evidence of record, Stumon's work as a production assembler was past relevant work because Stumon performed it within 15 years of the date of the decision,

---

activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1527(b) and 416.927(b).

[2] SVP" or "specific vocational preparation" is the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully-qualified worker to become accustomed to the special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs." Dictionary of Occupational Titles (DOT), App. C (Dep't of Labor Jan. 1991). SVP 2 is anything beyond short demonstration, up to and including 1 month. *Id*.

5

for a sufficient length of time to learn and provide average performance, and at the level of substantial gainful activity. The ALJ found that Stumon could perform his past work as production assembler.

The ALJ proceeded to address, alternatively, whether Stumon's impairments would preclude him from performing other work, and concluded they would not. The ALJ found Stumon could perform the representative occupations of cleaner and housekeeper, routing clerk, and collator operator, jobs existing in significant numbers in the national economy.

After the ALJ's decision was issued, at his attorney's request, Stumon had IQ testing performed by John T. Bopp, Ph.D., a psychologist. Dr. Bopp determined Stumon had a full-scale IQ score of 62, within the range of mild mental retardation. The information was submitted to the Appeals Council.

On March 8, 2014, the Appeals Council denied Stumon's request for review.

## II. Discussion

Stumon argues that the decision should be reversed for four reasons: he meets Listing 12.05(c) (mental retardation); Stumon's past work was not substantial gainful activity to which he could return; the ALJ applied the wrong test in determining Stumon could do light work, because Stumon is illiterate; and the RFC is unsupported by substantial evidence on the record as a whole because the ALJ did not mention borderline intellectual functioning.

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law." *Byers v. Astrue*, 687 F.3d 913, 915

(8th Cir. 2012). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v. Astrue,* 542 F.3d 626, 631 (8th Cir. 2008). "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915.

### A. Listing 12.05, mental retardation

At Step 3, the ALJ concluded Stumon did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments to which Stumon pointed. At the time, the Listings on which Stumon relied did not include Listing 12.05, mental retardation. Stumon argues that remand is required for the ALJ to specifically consider Listing 12.05, based on the after-acquired IQ testing he submitted to the Appeals Council.

The Appeals Council considered this new evidence and found that the ALJ's decision was supported by the record as a whole. [Tr. 1-3]. Contrary to Stumon's argument, the Appeals Council was not required to provide an analysis of the listing in denying review of the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b), and 416.1479.

In any event, when the Appeals Council denies review, it is a non-final, administrative decision, which this Court may not review. This Court may only review the ALJ's final decision. *See* 42 U.S.C. §§ 405(g) and 1382(c) (3) (the court is statutorily confined to review of the "final decision" of the Commissioner). Material new

7

evidence reviewed by the Appeals Council is simply reviewed by this Court as part of the record as a whole. *See Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995).

But on the record as whole and including the new evidence, Stumon cannot demonstrate that the ALJ would have reached the decision that he met Listing 12.05. *C.f., Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005) (reversing for failure to develop record is warranted only when such failure is prejudicial or unfair). Stumon has the burden to show, through medical evidence, that his impairment met all of the specified medical criteria contained in Listing 12.05. *See Carlson v. Astrue*, 504 F.3d 589, 593 (8th Cir. 2010) (*quoting Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). The listing provides, in relevant part:

> Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C. or D are satisfied….
>
> ***
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]
>
> ***

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

8

Case 4:14-cv-00306-NKL   Document 15   Filed 12/11/14   Page 8 of 17

Regulation provides that IQ scores are presumed to be stable after age 16. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D) (10). Moreover, an ALJ is not required to accept IQ scores; they may be rejected when inconsistent with the record, including contrary evidence of daily activities and behavior. *Miles v. Barnhart,* 374 F.3d 694, 699 (8th Cir. 2004) (*citing Clarke v. Apfel,* 141 F.3d 1253, 1255 (8th Cir. 1998)). For example, an ALJ may conclude a claimant is not disabled by mental retardation when the claimant has been able to work notwithstanding the cognitive ability he claims to possess. *Id.* (*citing Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000)). The ALJ may also rely on observations of the claimant made during the hearing. *Miles,* 374 F.3d at 699 (*citing Clarke,* 141 F.3d at 1255).

Thus, in *Miles,* the Eighth Circuit affirmed where the ALJ concluded the claimant did not meet Listing 12.05 because the claimant had attended regular classes in high school; received grades of B; completed a vocational training program; passed a driver license examination; had driven a car; had lived independently; had never been terminated from a job for lack of mental ability, but had been terminated because of lack of transportation or lack of work; and was working full time at the time of the hearing. 374 F.3d at 699. The ALJ also relied in part on his observations of the claimant during the hearing. *Id.* In *Clark v. Apfel,* 141 F.3d 1253, 1255–56 (8th Cir.1998), the court held that the ALJ properly rejected IQ scores when they were the product of one meeting with a non-treating psychologist; the scores were inconsistent with the claimant's unrestricted daily activities of reading, writing, counting money, driving, cooking, cleaning, shopping, and taking care of a young child; and no medical records reflected a diagnosis of mental

9

retardation prior to the time the claimant reached age 22.

But in *Bailey v. Apfel,* 230 F.3d 1063, 1065 (8th Cir. 2000), the court reversed where the ALJ discounted a claimant's IQ score of 63, because the claimant's education, daily activities, and work history "did not call into question the validity of the IQ results." The claimant had attended special education classes; had never lived independently; had been fired from jobs for being "slow"; and a significant portion of his work history involved working for his father. *Id.*

Here, Stumon's medical records, work history, and daily activities are inconsistent with his claimed level of cognitive ability. Notwithstanding his claim to have attended special education classes from sixth through ninth grade, no medical records reflect a diagnosis of mental retardation during the period prior to the time Stumon reached age 22. He has reported earnings and work activity over a period of 30 years, including working as a production assembler, cook's helper in a bar, and in lawn care. There is no evidence that he failed to maintain employment because of limitations relating to his intelligence, such as being "slow." He was married for almost 20 years. He cares for his mother on a daily basis. He lives independently, taking care of all of his personal needs without reminders, and doing all of his household chores. He rides the bus every day. His hobbies include playing pool, swimming, and playing basketball. The ALJ observed that Stumon did not have any difficulty concentrating or paying attention during the hearing, appeared to process the questions without difficulty, and responded to the questions appropriately and without delay. The psychological examiner and consultant opined that Stumon's memory functioning appeared to be adequate. The consultant who

prepared the Mental Residual Function Capacity Assessment form did not find that Stumon met any of the requirements of Listing 12.05, although the form explicitly identifies the listing and the specific requirements. The test results on which Stumon relies were the product of one meeting with a non-treating psychologist. In short, this case is more like *Miles* and *Clark* in which such testing was held appropriately discredited, than to *Bailey* in which it was not.

The after-acquired evidence of Stumon's intelligence testing does not mandate remand for further consideration.

### B. Whether Stumon's past work as a production assembler qualified as relevant work and substantial gainful activity

Past relevant work is work done within the last 15 years, and lasting long enough for the person to learn to do it. 20 C.F.R. §§ 404.1565(a) and 416.965(a). Stumon worked as a production assembler within the past 15 years—in 2005, 2006, and 2007. But he argues that it was not relevant because he only worked "off and on" for "brief periods" during those years. [Doc. 11, p. 35]. The vocational expert explained that Stumon's work as a production assembler was SVP 2— meaning a job learned through anything beyond short demonstration in a period of time up to one month—as generally performed pursuant to the Dictionary of Occupational Titles, and as actually performed by Stumon. His production assembler wages for 2005 to 2007 totaled $15,639.22; at $9 per hour or $360 per week, he worked for about 43 weeks or 10 months. There was substantial evidence on the whole record on which the ALJ could conclude that Stumon performed his work as a production assembler long enough to learn to do it. Stumon

performed qualifying past relevant work.

The work must also have constituted substantial gainful activity. 20 C.F.R. §§ 404.1565(a) and 416.965(a). Stumon argues that his work as a production assembler was not a substantial gainful activity. Whether a person has done work that qualifies as substantial and gainful is determined by regulation. *See* SSR 82-62, 1982 WL 31386 *2. Substantial gainful activity is defined as follows:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 404.1572 and 416.972. Generally, if an individual worked for substantial earnings, the SSA will find that the individual is able to do substantial gainful activity. 20 C.F.R. §§ 404.1574(b) and 416.974(b). But the fact that an individual's earnings were not substantial will not necessarily show that the individual is not able to perform substantial gainful activity. *Id.*

Stumon's work as a production assembler was substantial and gainful. His rate of pay was $9 per hour, and he indicated that he worked up to 40 hours a week. At that rate, his weekly rate of pay was $360, or $18,720 per year. Stumon notes that the substantial gainful activity limits for 2005, 2006, and 2007—$9,960 per year, $10,320 per year, and $10,800 per year, respectively, exceeded his total earnings each of those same years—

12

$5,133.56, $3,130.65, and $7,375.01, respectively. [Doc. 11, p. 35]. But the regulations do not require an individual to meet the annual earning limits in order to conclude that the individual is capable of performing substantial gainful activity. The regulations explicitly permit the work to be part time.

Substantial evidence on the whole record supports the ALJ's decision that Stumon's work as a production assembler qualified as past relevant work and substantial gainful activity.

### C. Whether Stumon could do light work

Stumon maintains that he is illiterate. Therefore, he argues, the ALJ applied the wrong test at Step 5 in determining Stumon could do light work, and should have found he was disabled under Rule 202.09.

The ALJ could have stopped at Step 4, having determined that Stumon could perform his past work as a production assembler. Therefore, how the ALJ applied a test at Step 5 cannot have prejudiced Stumon and suffices as no basis for reversal. Nevertheless, the ALJ proceeded to Step 5 and made an alternative determination concerning other jobs Stumon could do. Substantial evidence supports the ALJ's alternative decision.

At Step 5, an ALJ considers a claimant's present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications, to determine whether the claimant retains the capacity to perform a different kind of job that exists in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A) and 1532c(a)(3)(B); 20 C.F.R. §§ 404.1520(f)(1) and

13

416.920(f)(1); *Heckler v. Campbell,* 461 U.S. 458, 460 (1983). Only at Step 5 does the Commissioner consider the application of the medical-vocational guidelines, or the "grids." *See* 20 C.F.R. §§ 404.1569 and 416.969; 20 C.F.R. pt. 404, subpt. P, app. 2.

Under the regulations, "illiteracy" means the inability to read or write, such as the inability to read or write a simple message involving instructions or inventory lists. *See* 20 C.F.R. §§ 404.1564(a)(1) and 416.964(a)(1). Generally, an illiterate person has had little or no formal schooling. *Id*. A person with "limited education" has completed the 7th grade up through the 11th grade of formal education. *See* 20 C.F.R. §§ 404.1564(a)(3) and 416.964(a)(3).

The ALJ noted that Stumon was born on September 8, 1961 and was age 49 on the alleged disability onset date of February 15, 2011, qualifying as a "younger individual." *See* 20 C.F.R. §§ 404.1563 and 416.963. Stumon left school in the 9th grade. The ALJ found that Stumon had a limited education and was able to communicate in English. *See* 20 C.F.R. §§ 404.1564 and 416.964. The ALJ noted that if Stumon had the RFC to perform a full range of light work, Rule 202.18 (younger individual, limited or less education, skills not transferable) would direct a finding of not disabled. Following Stumon's 50th birthday on September 8, 2011, and his entry into the category of closely approaching advanced age, the application of Rule 202.11 would similarly direct a finding of not disabled (closely approaching advanced age, limited or less education, skills not transferable). *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.10. Substantial evidence on the whole record supported the ALJ's conclusion that the guidelines directed a finding of not disabled, had Stumon not had non-exertional limitations.

14

In posing the hypothetical to the ALJ, including Stumon's non-exertional limitations, the ALJ included the limitation of jobs that did not require "complex written communication." [Tr. 71]. The ALJ did so for the purpose of giving Stumon the benefit of every reasonable doubt. [Tr. 22]. Stumon had a limited education and testified that he was in special education from sixth through ninth grade. The consultative examiner found that Stumon had borderline intellectual functioning. Stumon could read, though with difficulty, and relied on friends and family to help him understand written communication. He had also managed to work for many years at a variety of jobs. The limitation the ALJ applied is not equivalent to a finding of illiteracy. Substantial evidence on the whole record does not support a finding that Stumon is illiterate and disabled under Rule 202.09.

Stumon points out that with respect to written communication, the RFC the ALJ found included the limitation of "does not require written communication," [Tr. 17], rather than the limitation the ALJ posed to the vocational expert, "do[es] not require complex written communication," [Tr. 71]. The distinction does not make a difference. Again, the ALJ was not required to proceed to examine other jobs existing in significant numbers in the national economy, because Stumon can perform past relevant work. Even so, two of the jobs the vocational expert identified, cleaner and housekeeper, and collator operator, were language level one, requiring the ability to print simple sentences containing subject, verb and object, and series of numbers, names and addresses. DOT, App. C. Based on the above discussion of Stumon's abilities, and because substantial evidence does not support a finding that Stumon is illiterate, substantial evidence on the

15

whole record supports a finding that Stumon could perform language level one jobs such as those identified by the vocational expert and relied on by the ALJ in making the alternative finding under Step 5.

Remand is not necessary based on the ALJ's finding that Stumon could do light work, and failure to find Stumon was illiterate.

**D. Whether the ALJ should have explicitly included the diagnosis "borderline intellectual functioning" when posing the RFC to the vocational expert**

As noted above, the ALJ was not required to proceed to Step 5. Therefore, remand for the ALJ to reform the hypothetical question is not required because it would have no bearing on the outcome.

In any event, a hypothetical posed to a vocational expert need not include a specific diagnosis, if the hypothetical adequately accounts for the concrete consequences of a claimant's impairments. *See Roe v. Chater,* 92 F.3d 672, 676 (8th Cir.1996) ("While the hypothetical question must set forth all the claimant's impairments, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.") Thus, in *Howard v. Massarani,* 255 F.3d 577, 582 (8th Cir. 2001), the court held that the ALJ's description of a claimant as "capable of doing simple work adequately account[ed] for the finding of borderline intellectual functioning." *See also Gragg v. Astrue,* 615 F.3d 932, 940-41 (8th Cir. 2010) (although the ALJ's hypothetical question did not use the phrases "learning disorder" or "borderline intellectual functioning," the ALJ did specifically note that the claimant could not read or write and was limited to simple tasks, sufficiently representing the limitations imposed by

16

the claimant's impairments).

Here, in posing the hypothetical, the ALJ limited Stumon to simple, routine and repetitive tasks, and work that did not require complex written communication or more than simple math. [Tr. 66, 71]. The hypothetical sufficiently accounted for Stumon's borderline intellectual functioning.

Remand is not necessary based on the ALJ's failure to explicitly mention Stumon's diagnosis in the hypothetical.

### III. Conclusion

The Commissioner's decision affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 11, 2014
Jefferson City, Missouri